**KEELER BRASS COMPANY, a corporation, Plaintiff,**

**v.**

**CONTINENTAL BRASS CO., (now Blaser Die Casting Company), a corporation, and Everett Bryant Sales, Inc., a corporation, Defendants.**

No. C–84–413–G.

United States District Court, M.D. North Carolina, Greensboro Division.

Aug. 17, 1987.

lost time with her employment injuries and not with any employment discrimination.

Jack W. Floyd of Smith, Helms, Mullis & Moore, Greensboro, N.C., and John E. McGarry of Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for plaintiff.

James W. Williams, Jr. and R. Marshall Merriman, Jr. of Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., and Frederick O. Frederickson and Alice F. Gustafson of Graham and Dunn, Seattle, Wash., for defendants.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This matter comes before the Court for supplemental findings regarding defendants' Rule 41(b) motions to dismiss at the close of plaintiff's evidence. Plaintiff Keeler Brass Co. [Keeler] brought this action alleging that defendants Continental Brass Co. [Continental] and Everett Bryant Sales, Inc. [Bryant Sales] infringed its copyright interests by producing an oriental drawer pull similar to one made by plaintiff. Finding Keeler to have made out a prima facie

case on the remanded theory, the Court will reserve ruling on the 41(b) motions until the close of all the evidence.

### I. *Procedural History*

The procedural history of this case is important to the resolution of the pending motions. The matter was tried without a jury on March 13, 1986. At the close of plaintiff's evidence, defendants made motions to dismiss pursuant to Rule 41(b), Federal Rules of Civil Procedure. The Court granted these motions and dismissed Keeler's complaint. Keeler appealed. The Fourth Circuit held that the district court was correct in dismissing that part of Keeler's claim which alleged infringement by copying the Keeler pull itself. The Fourth Circuit agreed that, as a utilitarian object, the pull itself was not copyrightable. *See Keeler Brass Co. v. Continental Brass Co.*, No. 86–2077, slip op. at 3 (4th Cir. Feb. 17, 1987), [812 F.2d 1401 (Table)]. However, the Fourth Circuit decided that Keeler had raised a second theory of infringement upon which the district court had not made findings. The second theory is that "defendants copied plaintiff's copyrighted drawings and made the accused three dimensional pull from the pirated material." *Id.* at 4. The court of appeals indicated that such a theory is *legally sufficient* and *if proven* would constitute infringement of the copyrighted drawings. *See id.* To summarize, the Court will now consider defendants' Rule 41(b) motion at the close of plaintiff's evidence as it relates to the theory argued on appeal[1] and remanded to this Court.

### II. *Discussion*

"Reduced to its most fundamental terms, there are only two elements necessary to the plaintiff's case in an infringement action: (1) ownership of the copyright by plaintiff, and (2) copying by the defendant." 3 M. Nimmer & D. Nimmer, *Nimmer On Copyright* § 13.01, at 13–3 (1986) [hereinafter Nimmer].

#### A. Copyright Ownership

If plaintiff is the author of the subject

---

1. The Court notes that different counsel represented defendants on appeal than represented them at trial. This remanded theory was not argued at trial.

matter,[2] his ownership is composed of the following elements: "(1) originality in the author,[3] (2) copyrightability of the subject matter, (3) citizenship status of the author such as to permit a claim of copyright, (4) compliance with applicable statutory formalities." *See id.* at § 13.01[A].

█ Procedural matters related to shifting burdens of production are important in infringement actions. A copyright registration certificate constitutes prima facie evidence in plaintiff's favor on the constituent elements of ownership. *Id.;* 17 U.S.C. § 410(c). "Once the plaintiff has established prima facie his ownership (through the registration certificate), the burden then shifts to the defendant to counter this evidence." *Id.* § 13.01[A], at 13–4 to –5. At trial, plaintiff introduced the registration certificate for a technical drawing of its oriental pull. *See* (Plaintiff's Trial Exhibit No. 8). Therefore, versions of the drawing covered by the registration certificate are subject to the prima facie presumption regarding the elements of ownership. Thus, the issue arises whether the drawing alleged to have been copied by defendants is within the scope of the registration.

Plaintiff's factual theory is that defendant copied the *initial drawing* it produced of its oriental pull (Plaintiff's Exhibit No. 3). Plaintiff contends that the initial drawing is covered by the registration and deposit with the copyright office. On the other hand, defendants contend that plaintiff's claim is fatally flawed because the drawing allegedly copied is different from the drawing actually deposited for registration. In other words, defendants contend that the initial drawing is not within the scope of the registration.

"[R]egistration is a condition precedent to the filing of an infringement action. However, once such registration occurs, a subsequent infringement action may be for infringing acts that occurred either after,

or prior to such registration." 2 *Nimmer* § 7.16[B], at 7–117.

█ Registration requires, *inter alia,* the deposit of complete copies of the best edition of the work. *Id.* § 7.17[E][2][b].

> The requirement of *complete* copies ... means that the copies as deposited must be fully as complete in all elements, including the placement of copyright notice, as were the copies theretofore published. Thus, if only a fragment or portion of the published work is deposited (such as the first of several published chapters) this will not comply with the statutory requirement of complete copies. However, if the work as published is in fragmentary or otherwise incomplete form, the requirement of depositing complete copies will be satisfied if the copies deposited are as complete as those theretofore published.

*Id.* § 7.17[E][1][a]. Defendants argue that the deposited drawings do not cover plaintiff's initial drawing because the deposited drawings are more detailed in that dimensions are included. The Court believes the above quoted portion of *Nimmer* makes clear that the *deposited* drawing must be as complete as the *published* drawing but does not require the *published* drawing to be as complete as the one *deposited.* Under the evidence thus far, it appears that plaintiff's initial drawing is comprehended within the deposited drawing, the deposited drawing only containing more detail. Therefore, at this stage the Court must resolve the registration issue in favor of plaintiff that plaintiff's initial drawing is covered by the registration made with the copyright office. Thus, introduction of the registration certificate makes out Keeler's prima facie case of *copyright ownership* in the initial drawing. The effect of the certificate is to shift the *burden of production* on the constituent elements of owner-

---

**2.** Defendant has not challenged that plaintiff *authored* the drawings in which it claims copyright interests.

**3.** For a discussion of originality, see 1 *Nimmer* § 2.01. *See also id.* § 2.08[D] ("The 'scientific

or technical' nature of a work may be on an elementary or juvenile level. Thus, drawings for the construction of a balsa wood model of the steamship Queen Mary were held protectible under this classification.").

ship to defendants, *not* to conclusively establish them.

## B. Copying

As stated above, the second element in an infringement action is copying. On remand, the issue of copying is narrow. It focuses on whether defendants copied Keeler's *initial drawing* (Plaintiff's Exhibit No. 3) in producing its own *working drawing* (Plaintiff's Exhibit No. 6).[4]

■ A plaintiff in a copyright infringement action rarely has access to direct evidence of *copying*. Therefore, courts have generally accepted a two prong circumstantial proof scheme. "[C]opying is generally established indirectly by the plaintiff's proof of access and substantial similarity." 3 *Nimmer* § 13.01[B], at 13–6; *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 445 (4th Cir.1986). The effect of showing access by the defendant and substantial similarity between the copyrighted work and the accused work is to shift the burden of production to defendant.[5]

■ Regarding access, Mr. Roser testified as follows: Lon Bush, a salesman for Keeler, visited Mr. Roser at Singer in the summer of 1983. They discussed hardware for a line of furniture being developed by Singer, "the Ming Terrace" bedroom suite. Either at this time or subsequently, Lon Bush gave Mr. Roser Keeler's *initial drawing* of a proposed oriental drawer pull (the initial drawing was introduced as Plaintiff's Exhibit No. 3). Mr. Roser testified that he had not seen such a design before. Singer decided to use the pull proposed by Lon Bush; however, later a disagreement arose over price and Mr. Roser sought to obtain a similar pull from defendants at a better price. Thereafter, Mr. Roser talked with Mr. Len Fouts a designer employed by defendant Bryant Sales.[6] Mr. Roser showed Mr. Fouts Keeler's initial drawing and told him he wanted some-

thing similar. Additionally, Mr. Roser showed Mr. Fouts the outline sketch of the Ming chest of drawers, which showed the required dimensions of the drawer pull. Mr. Fouts later met with Mr. Roser showing him several sketches of various proposed drawer pulls. Mr. Roser then picked defendants' working drawing, introduced at trial as Plaintiff's Exhibit No. 6. Defendants then produced a quantity of drawer pulls using its working drawing, which it sold to Singer.

The testimony of Mr. Roser indicates that Len Fouts, defendants' designer, saw Keeler's initial drawing prior to defendants producing its working drawing. At the close of Keeler's case-in-chief, this evidence is not disputed. Therefore, the Court must resolve at this stage of the proceeding, the issue of defendant's *access* to the copyrighted work in plaintiff's favor.[7]

The Court now turns to the "substantial similarity" prong of the circumstantial proof scheme for copying. In the instant case, the question is whether *defendants' working drawing* (Plaintiff's Exhibit No. 6) is substantially similar to *Keeler's initial drawing* (Plaintiff's Exhibit No. 3).

[T]he determination of the extent of similarity which will constitute a *substantial* and hence infringing similarity presents one of the most difficult questions in copyright law, and one which is the least susceptible to helpful generalizations. It is clear that slight or trivial similarities are not substantial and are therefore non-infringing. But it is equally clear that two works may not be literally identical and yet be found substantially similar for purposes of copyright infringement. The problem, then, is one of line drawing. Somewhere between the one extreme of no similarity and the other of complete and literal similarity

---

4. Mr. Roser testified that Continental's pull is a faithful reproduction of defendants' working drawing (Plaintiff's Trial Exhibit No. 6). *See* Trial Transcript at 26 (filed May 22, 1986).

5. Discussed *infra* p. 1189.

6. Bryant Sales is a designer and sales representative of defendant Continental.

7. The Court cannot *predict* whether witnesses will contradict Mr. Roser's testimony and how a credibility conflict would be resolved.

lies the line marking off the boundaries of 'substantial similarity.'

3 *Nimmer* § 13.03[A], at 13–20 to –20.1. It is entirely immaterial that in many respects plaintiff's and defendant's works are dissimilar if in other respects similarity as to a substantial element of plaintiff's work can be shown.... If substantial similarity is found, the defendant will not be immunized from liability by reason of the addition in his work of different characters or additional or varied incidents, nor generally by reason of his work proving more attractice or saleable than the plaintiff's.

*Id.* § 13.03[B], at 13–41 to –42. However, differences between plaintiff's and defendants' works are relevant. "If the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are (within the context of plaintiff's work) of minimal importance either quantitatively or qualitatively, then no infringement results. *Id.* § 13.03[B], at 13–42 to –43.

The Ninth Circuit applied a two step analysis of "substantial similarity" in *Sid & Marty Krofft Television v. McDonalds Corp.*, 562 F.2d 1157 (9th Cir.1977). *Krofft* clearly recognized the axiom that copyright protection does not extend to an idea but only to a particular *expression* of an idea. *Id.* at 1163. The first step is to determine whether there is a substantial similarity in *ideas*, the extrinsic test. *Id.* at 1164. In the instant case the Court believes the extrinsic test is satisfied as both plaintiff's initial drawing and defendants' working drawing express substantially similar ideas.[8] Both plaintiff's and defendants' drawings depict pulls expressing the ancient Chinese meander or key design which the Chinese call "thunder pattern." *See* C. Williams, *Outlines of Chinese Symbolism & Art Motives*, 117–121 (3d Ed., Dover Publications N.Y., N.Y., 1976) (Library of Congress No. 76–403–97) (Reprint of edition published by Kelley & Walsh, Shanghai, China, 1941). *See also id.* at 36 (illustration of "cloud and thunder pattern" on cauldron of the Shang Dynasty).

The second step, the intrinsic test, is "necessarily more subtle and complex." *Kroft,* 562 F.2d at 1164. Intrinsic similarity is substantial similarity between the forms of *expression* of the copyrighted work and the accused work. Determination of intrinsic substantial similarity depends "on the response of the ordinary reasonable person." *Id.* Under the present evidence, the Court believes the average person would perceive plaintiff's initial drawing and defendants' working drawing as substantially similar.

The Court is also cognizant of the principle that "the degree of substantial similarity required to show infringement varies according to the type of work and the ideas expressed in it." *Landsberg v. Scrabble Crosswork Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). "Some ideas can be expressed in a myriad of ways, while others allow only a narrow range of expression." *Id.* Under plaintiff's evidence, at this point the Court cannot conclude that the means of *expressing* a drawing of an oriental drawer pull are so limited that plaintiff must show verabtim or exact similarity. Thus, out of an abundance of precaution the Court will view the issue of "substantial similarity" in plaintiff's favor at this stage of the proceeding.

Having resolved, *at this stage of the proceeding,* both "access" and "substantial similarity" in plaintiff's favor, the Court must determine their procedural effect. It is beyond dispute that such findings permit but do not require an inference of copying. 3 *Nimmer* §§ 12.11[D], 13.01[B], at 12–82 to –83, 13–6. Some courts have held that a plaintiff's showing of access and substantial similarity shifts to defendant the burden of rebutting copying by "strong, convincing, and persuasive evidence beyond merely the preponderance of evidence." *Id.* § 12.11[D], at 12–85. On the other extreme, would be the position that such

---

8. Defendants concede this point in their brief. *See* (Defendant's Brief On The Issue of Copying at 2 (filed May 8, 1987)).

**1190**

showing has no procedural effect. This Court believes the middleground to be appropriate. A showing of access by the defendant and substantial similarity between the protected and accused works, shifts the burden of *production* to the defendant to adduce evidence rebutting the inference of copying. *See id.* §§ 12.11[D], 13.01[B], 12–83 to –84, 13–8. *See generally Kamar Int'l, Inc. v. Russ Berrie & Co.,* 657 F.2d 1059, 1062 (9th Cir.1981) (the district court was in error in failing to shift the burden of proof); *Blumcraft of Pittsburgh v. Newman Bros., Inc.,* 373 F.2d 905, 907 (6th Cir.1967) (burden of going forward shifts); *Meta–Film Associates, Inc. v. MCA, Inc.,* 586 F.Supp. 1346, 1355 (C.D.Cal.1984) (burden shifts to defendant to show independent creation).

Therefore, in the instant case the burden of going forward presently rests on defendants on the issue of copying. This in conjunction with plaintiff's having made out its prima facie case on copyright ownership is sufficient for plaintiff's remanded theory to withstand defendants' Rule 41(b) motions. Hence, this matter will be scheduled for presentation of evidence on the remanded theory by the defendants and rebuttal by plaintiff, if any. Plaintiff has already presented its case in chief and will not be permitted to retry its case *de novo.* Thus, after defendants' evidence, if any, plaintiff's rebuttal will be limited to responding to defendants' evidence.

IT IS, THEREFORE, ORDERED that defendants' Rule 41(b) motions for dismissal at the close of plaintiff's evidence be, and the same hereby is, RESERVED until the close of all the evidence.

IT IS FURTHER ORDERED that this matter be placed on the trial calendar for the sole purpose of hearing evidence for the defendants on the *remanded theory* and plaintiff's rebuttal thereon, if any.