**KEELER BRASS COMPANY, a corporation, Plaintiff,**

v.

**CONTINENTAL BRASS CO., (now Blaser Die Casting Company), a corporation, and Everett Bryant Sales, Inc., a corporation, Defendants.**

No. C–84–413–G.

United States District Court, M.D. North Carolina, Greensboro Division.

Feb. 5, 1988.

Jack W. Floyd of Smith, Helms, Mullis & Moore, Greensboro, N.C., and John E. McGarry of Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for plaintiff.

James W. Williams, Jr. and R. Marshall Merriman, Jr. of Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro,

N.C., and Frederick O. Frederickson and Alice F. Gustafson of Graham and Dunn, Seattle, Wash., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HIRAM H. WARD, Chief Judge.

This matter comes before the Court for ruling on defendants' Rule 41(b) motions to dismiss at the close of plaintiff's evidence [1] and comes before the Court for findings of fact and conclusions of law upon all the evidence pursuant to Rule 52 of the Federal Rules of Civil Procedure. Plaintiff brought this action alleging that defendants infringed its copyright interests by copying an oriental drawer pull and drawings thereof made by plaintiff. Finding defendants' Rule 41(b) motions to be moot, the Court will deny the same. However, finding upon all the evidence that plaintiff failed to establish "copying," the Court will enter judgment for the defendants.

### I. *Procedural History*

The Court fully discussed the procedural posture of the instant case in its Memorandum Opinion and Order of August 17, 1987. Therefore, only a brief review is necessary. The Court heard plaintiff's evidence on March 13, 1986, and thereafter granted defendants' Rule 41(b) motions to dismiss. On appeal the Fourth Circuit affirmed in part [2] but remanded in part for further findings on the question of whether "defendants copied plaintiff's copyrighted drawings and made the accused three dimensional pull from the pirated material." *See Keeler Brass Co. v. Continental Brass Co.*, No. 86–2077, slip op. at 4 (4th Cir. Feb. 17, 1987) [812 F.2d 1401 (Table) ]. Having already heard plaintiff's evidence, the Court heard defendants' evidence on December 2, 1987, and gave plaintiff an op-

portunity to present rebuttal evidence which it chose not to do. Thus, all the evidence is before the Court and this matter is ready for resolution.

The Court notes that defendant did not attempt to rebut plaintiff's prima facie case of copyright ownership in its *initial drawing* of the drawer pull. *See Keeler Brass Co. v. Continental Brass Co.*, 678 F.Supp. 1185, 1187–1188 (M.D.N.C.1987) (discussion of plaintiff's prima facie case on copyright ownership). Therefore, the focus of this dispute and of the Court's findings is on the issue of whether defendants *copied* Keeler Brass Company's initial drawing (Plaintiff's Exhibit No. 3) in producing its own working drawing (Plaintiff's Exhibit No. 6).

### II. *Concession as to the Unavailability of Statutory Damages*

At the close of all the evidence, defendants argued that statutory damages and attorney's fees are unavailable to Keeler Brass Company [Keeler]. Specifically, defendants contend that section 412 of Title 17 precludes statutory damages and attorney's fees [3] under any view of the evidence adduced. *See* (Defendants' Memorandum on Authorities on the Issue of Statutory Damages [Dec. 2, 1987] ). In its response, plaintiff concedes the correctness of defendants' argument; therefore, statutory damages and attorney's fees are no longer in issue. *See* (Plaintiff's Response to Defendants' Memorandum Regarding Statutory Damages and Attorney's Fees [Dec. 14, 1987] ).

The Court, however, must still resolve the merits of this case. Plaintiff seeks an injunction precluding defendants from making copies of plaintiff's copyrighted drawings as well as an injunction against defendants' further sales of articles which

---

1. The Court previously reserved ruling on defendants' Rule 41(b) motions for dismissal at the close of plaintiff's evidence. *See* Memorandum Opinion and Order filed herein on August 17, 1987.

2. The Fourth Circuit held that the district court was correct in dismissing that part of Keeler's claim which alleged infringement by copying the Keeler pull itself. The Fourth Circuit

agreed that, as a utilitarian object, the pull itself was not copyrightable. *See Keeler Brass Co. v. Continental Brass Co.*, No. 86–2077, slip op. at 3 (4th Cir. Feb. 17, 1987) [812 F.2d 1401 (Table) ].

3. Plaintiff sought statutory damages under 17 U.S.C. § 504(c) and attorney's fees under 17 U.S.C. § 505. *See* Order on Final Pretrial Conference at 3 (filed Oct. 28, 1985).

allegedly have been made from plaintiff's copyrighted drawings. Thus, if plaintiff were to prevail on the merits, the Court could grant it effective relief. Therefore, the issue regarding equitable relief is not moot.

### III. *Defendants' Rule 41(b) Motions for Dismissal*

In its Memorandum Opinion and Order of August 17, 1987, the Court reserved ruling on defendants' Rule 41(b) motions for dismissal as they related to plaintiff's theory that its *drawings* were infringed. However, the Court has now heard all the evidence and will enter its findings of fact and conclusions of law thereon. Therefore, defendants' Rule 41(b) motions to dismiss at the close of plaintiff's evidence are moot and will be denied.

### IV. *Findings of Fact*

#### A. Parties and Third-party

1. Plaintiff Keeler Brass Company [Keeler] is a designer and manufacturer of decorative hardware for the furniture industry.

2. Defendant Continental Brass Company [Continental] is a manufacturer of decorative furniture hardware.

3. Defendant Everett Bryant Sales [Bryant Sales] is a sales agent for Continental and also employs a hardware designer.

4. Singer Furniture Company [Singer] is a manufacturer of furniture.

#### B. Background

5. During the summer of 1983, Singer was in the process of developing, and outfitting with hardware, a line of furniture called "the Ming Terrace" bedroom suite [hereinafter Ming Suite].

6. In the summer of 1983, Lon Bush, a sales representative for Keeler, met with John Roser. John Roser was the furniture designer working for Singer who was responsible for the Ming Terrace bedroom suite. They discussed hardware for the Ming Suite; in particular they discussed drawer pulls.

7. At the meeting described in paragraph six, Lon Bush showed John Roser a Keeler drawing. The Keeler drawing depicted an oriental style drawer pull as viewed from the front and in cross section and bore the copyright symbol followed by "Keeler Brass Co." (The drawing will be referred to as Keeler's initial drawing and was introduced at trial as Plaintiff's Exhibit No. 3).

8. Singer initially decided to use the Keeler pull proposed by Lon Bush. Singer did a mock up of a Ming Suite drawer with a place routed out for the drawer pull proposed by Keeler. The pull was to be flush mounted on the drawer face except for the lower portion of the pull, which was slightly recessed into the lower raised portion of the drawer face. Thus, the route line tracked only the lower part of the outer edge of the back plate of the proposed drawer pull. The Keeler pull design was not embossed on the drawer front.

9. Keeler registered its copyright covering its allegedly infringed drawing effective January 23, 1984.

#### C. Actions of Defendants

10. Subsequent to Lon Bush's meeting with John Roser, Len Fouts met with John Roser of Singer. Len Fouts was a designer employed by Bryant Sales. John Roser indicated that he wanted a drawer pull with an oriental feel and a campaign look. Len Fouts obtained the exterior dimensions for the drawer pull from John Roser. Additionally, Len Fouts made a "rubbing" of the route line on the drawer face of the mock up of *the Ming Suite.* As described in paragraph eight above, the route line tracked only the lower edge of the drawer pull; the Keeler pull design was not routed on the drawer front. During the meeting, John Roser showed Len Fouts Keeler's initial drawing; however, Fouts was not given the drawing or a copy of it.

11. Len Fouts designed several sketches of drawer pulls to propose to John Roser, one of which is the accused work, "defendant's working drawing" (Plaintiff's Exhibit No. 6).

12. Len Fouts never had Keeler's initial drawing or a copy thereof while he was designing defendants' working drawing. Len Fouts created defendants' working drawing (Plaintiff's Exhibit No. 6) independently of Keeler's initial drawing (Plaintiff's Exhibit No. 3) and did not copy it. Everett Bryant did not participate in the design of defendant's working drawing.

13. John Roser chose defendants' working drawing (Plaintiff's Exhibit No. 6) from among Fouts' several sketches to be the design of the drawer pull for the Ming Suite. Continental manufactured drawer pulls which were derived from defendants' working drawing and which it ultimately sold to Singer to be used on the Ming Suite.

**D.  Similarity, Dissimilarity, and Commonality**

14. Keeler's initial drawing and defendants' working drawing are similar in the following respects:

a.  Both depict drawer pulls with backplates of similar exterior dimensions. Both have indentions on the bottom corners of the back plates. Both indicate that the receptacles for attaching screws are three inches apart.

b.  Both depict drawer pulls with bails of the same *general* size, shape and orientation.

c.  Both incorporate into the bail design the common ancient Chinese design element referred to as the key design.

15. Keeler's initial drawing and defendants' working drawing are dissimilar in the following respects:

a.  Keeler's drawing does not have indentions in the top corners of the backplate while the defendants' drawing does.

b.  Keeler's drawing depicts a finger hole which is rounded at the top while that depicted by defendants' drawing is straight.

c.  Keeler's drawing depicts a backplate with a mild arc in the bottom edge while that depicted by defendants' drawing has a more severe arc or curve.

d.  Keeler's drawing depicts a pull which is flat in cross section while that depicted by defendants' drawing is arced or bowed.

e.  Keeler's drawing depicts *a bail* which has no indention on its outer perimeter while that depicted by defendants' drawing has indentions at all four corners which are carried through from the backplate.

f.  Keeler's drawing depicts a bail which articulates with the backplate at its outer perimeter while that depicted by defendants' drawing articulates with the backplate at the inner perimeter.

16. The Chinese Key or meander pattern, used in both plaintiff's and defendants' drawings, is a common design element from antiquity. *See* C. Williams, *Outlines of Chinese Symbolism & Art Motives* 117–121 (3d ed., Dover Publications N.Y., N.Y., 1976)(Library of Congress No. 76–403–97)(Reprint of edition published by Kelley & Walsh, Shanghai, China, 1941). *See also id.* at 36 (illustration of "cloud and thunder pattern" on cauldron of the Shang Dynasty).

**V.  *Discussion***

"Reduced to its most fundamental terms, there are only two elements necessary to the plaintiff's case in an infringement action: (1) ownership of copyright by plaintiff, and (2) copying by the defendant." 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.01, at 13–3 (1986) [hereinafter *Nimmer*]. A copyright registration certificate constitutes prima facie evidence in plaintiff's favor on the constituent elements of ownership. *See id.* § 13.01[A]; 17 U.S.C. § 410(c). At trial, Keeler introduced the registration certificate which covers its initial drawing. *See* Memorandum Opinion and Order herein of August 17, 1987, at 1187–1188. Defendant put on no evidence challenging the constituent elements of copyright ownership as to Keeler's *initial drawing*. Therefore, Keeler's ownership of copyright in its initial drawing is established for the purposes of this

case. Thus, the heart of the instant dispute is the second element of an infringement claim, "copying." Additionally, the Court notes that the parties' real factual dispute is as to defendants' actions, not the background facts.

The issue of copying is narrow. It focuses on whether defendants copied Keeler's *initial drawing* (Plaintiff's Exhibit No. 3) in producing its own *working* drawing (Plaintiff's Exhibit No. 6). A plaintiff may attempt to show copying by direct or circumstantial evidence. Courts have generally accepted a two-prong circumstantial proof scheme as permitting but not requiring an inference of copying. "[C]opying is generally established indirectly by the plaintiff's proof of access and substantial similarity." 3 *Nimmer* § 13.01[B], at 13–6; *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 445 (4th Cir.1986). A showing of access and substantial similarity shifts the burden of *production* to the defendant to adduce evidence rebutting the inference of copying. *See id.* §§ 12.11[D], 13.01[B], 12–83 to –84, 13–8. *See generally Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir.1981)(the district court was in error in failing to shift the burden of proof); *Blumcraft of Pittsburgh v. Newman Bros., Inc.*, 373 F.2d 905, 907 (6th Cir.1967)(burden of going forward shifts); *Meta–Film Associates, Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1355 (C.D.Cal.1984) (burden shifts to defendant to show independent creation); *see also* Memorandum Opinion and Order herein of August 17, 1987, at 1188–1189.

With respect to access, John Roser testified that he showed Len Fouts Keeler's initial drawing. However, John Roser did not testify that Len Fouts made any drawings from or copies of Keeler's drawing. Len Fouts indicated that John Roser may have shown him the drawing but that he did not remember whether he had. In any event, Len Fouts testified unequivocally that he never had a copy of Keeler's initial drawing during his design process and that he did not copy anyone else's drawing in creating his design. Thus, the evidence indicates that Len Fouts had access to Keeler's initial drawing. Yet, the evidence

is undisputed that the access was very limited. The limited nature of the access is relevant to the strength of any inference of copying to be drawn from the two-prong proof scheme.

The second prong of the proof scheme is substantial similarity. The Court discussed the standard for determining substantial similarity in its previous opinion. *See* Memorandum Opinion and Order herein of August 17, 1987, at 1189–1190. It is sufficient here to state that the Court believes the evidence before it justifies a conclusion that Keeler's initial drawing and defendants' working drawing meet the substantial similarity test. However, the strength of any inference of copying to be drawn from the substantial similarity between the two drawings is significantly undercut by the dissimilarities which exist. These dissimilarities are set out in the Court's findings of fact.

To summarize, the Court finds plaintiff to have minimally made out the two prongs of the circumstantial proof scheme. As stated above, satisfying the predicates for the proof scheme shifts the burden of *production* to the defendant. If a defendant carries its burden of production, the plaintiff's showing permits but does not require an inference of copying. Len Fouts testified that he did not use the Keeler drawing in creating defendants' working drawing. Thus, defendants carried their burden of production. Therefore, the Court's task is to weigh all the evidence to determine whether plaintiff has carried its burden of persuasion on "copying."

Essentially, the Court must weigh and balance plaintiff's circumstantial evidence against the direct testimony of Len Fouts. As discussed above, Keeler has put on circumstantial evidence of copying via access and substantial similarity. The weight of such evidence is diminished by several facts. First, Len Fout's access to Keeler's initial drawing was limited. Second, significant dissimilarities exist between the two drawings. Third, the substantial similarity which does exist between the two drawings is readily explained by

something other than copying. The primary design element in both drawings—the Chinese key—is a common design element from antiquity. Thus, the similarities of the drawings are as likely the result of independent use of a common oriental design element as the result of copying.

Len Fouts, defendants' designer who created the accused work, stated that he did not copy Keeler's initial drawing. He testified that although he may have seen Keeler's drawing, he did not have or use it during the design process. He indicated that in creating defendants' working drawing he drew from his prior experience in the marketplace. Additionally, he indicated that at the time he created defendants' drawing, he was aware of the Chinese key design although he did not know what it was called.

The Court finds Len Fouts' testimony to be credible. He testified forthrightly and unequivocally regarding the matters in issue. His testimony fully supports the Court's finding that defendants did not copy Keeler's initial drawing. The strength of any inference of copying to be drawn from the "access and substantial similarity" shown here is simply insufficient to overcome Len Fouts' testimony. Therefore, the Court concludes that defendants did not copy plaintiff's drawing. Plaintiff has thus failed to establish an essential element of its infringement claim and defendants are entitled to judgment.

### VI. *Conclusions of Law*

1. The Court has jurisdiction over the parties and their dispute.

2. Keeler made a showing of "access and substantial similarity" sufficient to shift the burden of *production* to defendants on the issue of "copying."

3. Defendants carried their burden of *production* on copying through the testimony of Len Fouts.

4. Upon all the evidence and applicable law, plaintiff failed to show by a preponderance of the evidence that defendants copied its initial drawing. Therefore, plaintiff failed to establish an essential element of its case.

5. A judgment for defendants will be entered accordingly.

### JUDGMENT

The Court tried the claims of plaintiff Keeler Brass Company without a jury. Pursuant to Rule 52, Fed.R.Civ.P., the Court made Findings of Fact and Conclusions of Law which were filed contemporaneously herewith. Therein the Court held that judgment on plaintiff's claims should be rendered for the defendant.

NOW, THEREFORE, pursuant to the Findings of Fact and Conclusions of Law filed herein, IT IS ORDERED AND ADJUDGED that plaintiff Keeler Brass Company have and recover NOTHING from the defendants, and that its claims in this action be, and the same hereby are, DISMISSED.